UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANTON J. KRAWCZUK,

      Petitioner,

v.                                    Case No: 2:13-cv-559-FtM-29CM

SECRETARY,            FLORIDA
DEPARTMENT   OF   CORRECTIONS
and ATTORNEY GENERAL, STATE
OF FLORIDA,

      Respondents.[1]

---

## OPINION AND ORDER

This case is before the Court on a petition for habeas corpus relief filed by death row inmate Anton Krawczuk ("Petitioner" or "Defendant") (Doc. 1, filed July 18, 2013).  Upon consideration of the petition, the Court ordered Respondent to show cause why the relief sought should not be granted (Doc. 13).  Thereafter, Respondent filed a response in compliance with this Court's instructions and with the Rules Governing Section 2254 Cases in the United States District Courts (Doc. 25).  Petitioner filed a reply (Doc. 30).

---

[1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." Rumsfeld v. Padilla, 542 U.S. 426, 436 (2004)(citations omitted).  In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections.  Therefore, the Florida Attorney General will be dismissed from this action.

Petitioner raises four claims for relief in his petition. Upon due consideration of the pleadings and the state court record, each claim must be denied. Because the Court may resolve the Petition on the basis of the record, an evidentiary hearing is not warranted. See Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## I.  Statement of the Facts

The facts, as set forth by the Florida Supreme Court, are as follows:

> On September 13, 1990, a decomposing body was found in a rural wooded area of Charlotte County. Earlier, David Staker's employer notified Lee County authorities that he had missed several days of work and had not picked up his paycheck. When she went to his home, she found the door open, and it appeared that the house had been robbed. Near the end of September, the Charlotte County body was identified as Staker, and Gary Sigelmier called the Charlotte County Sheriff's office to report that he may have bought the property stolen from Staker's home. Sigelmier identified Krawczuk and Billy Poirier as the men who sold him the stolen goods, and Lee and Charlotte deputies went to the home Krawczuk and Poirier shared in Lee County. They found both men at home and took them to the Lee County Sheriff's office where, after waiving his Miranda rights, Krawczuk confessed to killing Staker.
>
> According to his confession, Krawczuk had known Staker for about six months and had a casual homosexual relationship with him, as

did Poirier. The week before the murder, the pair decided to rob and kill Staker. Krawczuk called and arranged for him and Poirier to visit Staker. Krawczuk picked Poirier up at work and drove him home to change clothes. He parked in a shopping area, and the pair walked to Staker's house. Once there, they watched television for twenty to thirty minutes, and Krawczuk then suggested that they go to the bedroom. With the undressed trio on the bed, Krawczuk started roughing up Staker and eventually began choking him. Poirier assisted by holding Staker's mouth shut and pinching his nose closed. Staker resisted and tried to hit Krawczuk with a lamp, but Poirier took it away from him. The choking continued for almost ten minutes, after which Krawczuk twice poured drain cleaner and water into Staker's mouth. When fluid began coming from Staker's mouth, Poirier put a wash cloth in it and tape over Staker's mouth. Krawczuk tied Staker's ankles together, and the pair put him in the bathtub. They then stole two television sets, stereo equipment, a video recorder, five rifles, and a pistol, among other things, from the house and put them in Staker's pickup truck. After putting the body in the truck as well, they drove to Sigelmier's. Sigelmier bought some of the stolen items and agreed to store the others. Krawczuk and Poirier returned to their car, transferred Staker's body to it, and abandoned Staker's truck. Krawczuk had scouted a rural location earlier, and they dumped Staker's body there.

When the deputies went to Krawczuk's home, they had neither a search warrant nor an arrest warrant. Krawczuk moved to suppress his confession as the product of an illegal arrest. In denying that motion the court held that the deputies had probable cause to arrest Krawczuk when they went to his house but that Poirier's mere submission to authority did not provide legal consent to enter the house. Although the judge found that Payton v. New York, 445 U.S. 573, 100 S. Ct. 1371, 63 L.Ed.2d 639 (1980), had been violated, he also found

Krawczuk's confession, made after <u>Miranda</u> rights were given and waived, admissible under <u>New York v. Harris</u>, 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990). After losing the motion to suppress, Krawczuk sought to change his plea to guilty. The court held an extensive plea colloquy, during which Krawczuk was reminded that pleading guilty cut off the right to appeal all prior rulings. Krawczuk and his counsel also informed the court that Krawczuk wished to waive the penalty proceeding. Neither the state nor the court agreed to this, and the penalty phase took place in early February 1992.

Krawczuk refused to allow his counsel to participate in selecting the penalty phase jury and forbade her from presenting evidence on his behalf. The jury unanimously recommended that he be sentenced to death. Afterwards, the court set a date for hearing the parties and a later date for imposition of sentence. At the next hearing the judge, over Krawczuk's personal objection, stated that he would look at the presentence investigation report and the confidential defense psychiatrist's report for possible mitigating evidence. At the final hearing the court sentenced Krawczuk to death, finding three aggravators and one statutory mitigator.

<u>Krawczuk v. State</u>, 634 So. 2d 1070, 1071-72 (Fla. 1994) (footnotes omitted).

## II.  **Procedural History**

On or about October 3, 1990, Petitioner and co-defendant William Poirier ("Poirier") were indicted for first degree premeditated murder (count one), first degree felony murder (count

two), and robbery (count three) (Ex. A3 at 446).[2]  Petitioner filed a motion to suppress his confession (Ex. A4 at 525), and after a hearing on the motion, it was denied (Ex. A2 at 274-354; Ex. A5 at 544).

Thereafter, on September 27, 1991, Petitioner entered a guilty plea to the charges, and asked that the court impose the death penalty (Ex. A3 at 386-424).  The trial court advised Petitioner that he could not waive a penalty hearing and that a defendant's request for the death penalty "[i]n all probability it would not enter into the decision as to whether to impose it or not." Id. at 390.  The state refused to waive a jury at the penalty phase, and the trial court agreed (Ex. A7 at 654-55).

Prior to jury selection for the penalty phase, Petitioner reiterated his desire that counsel not participate in the penalty phase or offer any mitigation evidence (Ex. A8 at 695).  The trial court explained that Petitioner had the right to present mitigation evidence, but Petitioner insisted that he did not wish to do so and that he had instructed his attorney to offer no mitigation (Ex. A8 at 9-10, 11-12, and 13).  Petitioner also told the trial court that he did not wish for counsel to participate in jury selection, call witnesses, or make a closing argument. Id. at 15-16. Counsel Barbara LeGrande ("LeGrande") told the court that she

---

[2] References to exhibits are to those filed by Respondent on March 21, 2014 (Doc. 27).

strongly advised Petitioner against waiving his right to present mitigation evidence. Id. at 16-18.

A penalty phase commenced on February 4. 1992 (Ex. A1; Ex. A2). Legrande told the trial court that Petitioner did not want to offer mitigation evidence. Petitioner was questioned several times by the court, but he insisted that no mitigation evidence be offered (Ex. A2 at 190-231). The jury unanimously recommended death (Ex. A2 at 268; Ex. A5 at 584). After a Spencer[3] hearing, the trial court sentenced Petitioner to death (Ex. A5 at 590). He was also sentenced to fifteen years in prison for the robbery conviction (Ex. A5 at 593).[4] The Florida Supreme Court affirmed

---

[3] Spencer v. State, 615 So. 2d 688 (Fla. 1993) (a trial judge may not formulate his or her sentencing decision prior to giving he defendant an opportunity to be heard).

[4] The trial court found three aggravating factors: (1) the murder was committed in the course of a robbery and was committed for pecuniary gain; (2) the murder was especially heinous, atrocious, or cruel (HAC); and (3) the murder was committed in a cold, calculated, and premeditated manner without any pretense of legal or moral justification (CCP) (Ex. A5 at 587-90). The trial court also found that one statutory mitigator (Petitioner had no significant history of criminal activity) was established. Id. at 590. The court found no non-statutory mitigators. Id. The court gave great weight to the second and third aggravating circumstances and "significantly less weight" to the first aggravating circumstance and the mitigating circumstance. Id. at 592. The court made a specific finding that it had "received the benefit of all possible material mitigating circumstances from the psychiatrist report and from the presentence investigation[.]" Id. at 591. The court also dismissed the psychiatrist's conclusion that Petitioner was the more passive of the two defendants. Id. at 592. The court followed the jury's recommendation and imposed the death penalty for the first-degree murder conviction. Id. at 593.

Petitioner's convictions and sentences. <u>Krawczuk v. State</u>, 634 So. 2d 1070 (Fla. 1994) (hereinafter, "<u>Krawczuk I</u>").

On October 3, 1995, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion").[5]  He filed an amended motion on March 15, 2002, raising twenty-four separate claims (Ex. D24). An evidentiary hearing was held on each of Petitioner's claims alleging ineffective assistance of counsel or requiring factual development (Ex. D17; Ex. D18; Ex. D20).

At the evidentiary hearing, Petitioner introduced testimony about his troubled background.   Testimony was heard from Petitioner's brother, Christopher Krawczuk ("Christopher"). Christopher testified that their mother was both verbally and physically abusive and that, although there were several boys in the family, Petitioner received the brunt of their mother's anger. In addition, when Petitioner eventually left home to live with a friend, his mother did not check on him or offer any assistance (Ex. D17 at 1514-43).   Santo Calabro, Petitioner's former stepfather, also testified that Petitioner's mother was violent towards all of her children, but focused her violence on

---

[5] Petitioner filed his motion before the Florida Supreme Court created Rule 3.851 of the Florida Rules of Criminal Procedure, the post-conviction rule currently applicable to death-sentenced petitioners.

Petitioner. Petitioner would seek negative attention from his mother because she showed him no love. Id. at 1555-93. Petitioner's friend Todd Kaase ("Kaase") testified that he had witnessed Petitioner's mother hit her sons and that after Petitioner came to live with Kaase's family, Petitioner's mother never checked on him. Id. at 1575-87. Petitioner's mother testified that she would often get angry with her children and "smack" them around. Petitioner received the brunt of her anger because he was not a loving child and because he was "aggravating and incorrigible." She did not believe that her abuse caused Petitioner to murder Staker. Id. at 1589-1602. Petitioner's former co-worker, Paul Wise, testified that Petitioner had lived with him for eight or nine months and that he was a dependable worker, although he was moody at times. Id. at 1606-15. Petitioner's ex-wife, Judy Nelson, testified that Petitioner had told her about his abusive mother and that Petitioner's mother had been verbally abusive towards her as well. She also testified that Petitioner used marijuana numerous times per day. She did not like Poirier, and referred to him as Petitioner's "protégé." She testified that Petitioner and Poirier frequently robbed together and that Poirier usually came up with the ideas (Ex. D20 at 2375-81).

In addition to background witnesses, Petitioner introduced the testimony of two mental health experts. Dr. Barry Crown

testified that he had conducted a brief interview with Petitioner and administered a battery of neuropsychological tests to determine the relationship between Petitioner's brain function and his behavior (Ex. D17 at 1633-37).   Dr. Crown found Petitioner exhibited no evidence of malingering, normal intellectual functioning, and poor intellectual efficiency.   He believed that Petitioner had the critical thinking skills of a ten year old, the mental processing of a thirteen year old, and organic brain damage to the anterior of the brain.   Id. at 1638.   Dr. Crown believed that Petitioner was under the influence of extreme mental or emotional disturbance when he murdered David Staker.   Id. at 1648. He also believed that Petitioner had no capacity to conform his conduct to the requirements of the law.   Id. at 1648-49.   Dr. Crown did not review other psychiatric reports prior to his examination of Petitioner and did not know that Dr. Keown had concluded that Petitioner showed no signs of organic brain damage.   Id. at 1650, 1653.[6]   Dr. Crown was unaware that Petitioner had discussed murdering his victim for a week prior to the crime; was unaware that David Staker was Petitioner's sexual partner; and was unaware that Petitioner refused to testify against co-defendant Poirier. Id. at 1658-61.

---

[6] Dr. Keown was the psychiatrist appointed by the trial court prior to trial to perform a psychiatric evaluation and to provide assistance to the defense in the presentation of their case (Ex. D19B at 2198).

Psychologist Faye Sultan testified that she had interviewed Petitioner at length and also interviewed his family (Ex. D17 at 1699).   She detailed the abuse Petitioner had suffered at the hands of his mother and stated that Petitioner told her that he had been sexually molested when he was eight or ten years old.  Id. at 1711.   She diagnosed Petitioner with cognitive dysfunction and impulse control.  Id. at 1765.    She concluded that Petitioner had been under extreme mental or emotional disturbance when he killed David Staker.  Id. at 1724.   She also concluded that Petitioner was unable to conform his conduct to the requirements of the law.  Id. She admitted that there had been a great deal of planning involved in Staker's murder, but concluded that brain damage does not necessarily stop a person from being able to plan.  Id. at 1735-44.   As far as Petitioner's waiver of presenting mitigation evidence, she believed that Petitioner would have found mitigation "messy" and "if he made the decision to die, [he] didn't have to consider it."  Id. at 1730.

The post-conviction court did not find Dr. Crown's testimony credible, noting:

> Dr. Crown expressed the opinions that Mr. Krawczuk was under the influence of extreme mental or emotional disturbance at the time of the crime and his ability to appreciate the criminality of his or her conduct or to conform his or her conduct to the requirements of law was substantially impaired.  The court holds so strongly to the view that the other evidence including, particularly, Mr.

>Krawczuk's confession but also including Mr. Krawczuk's letters, the statement and deposition of Gary Sigelmier, the statement of Mr. Poirier, the testimony of the family members and friends, the other mental health professionals, reports and deposition, and other credible evidence in this case so resoundingly refute this opinion as to discredit as well the related opinion that Mr. Krawczuk suffers from organic brain damage.

(Ex. D21 at 2455). The court also concluded that Dr. Sultan was not a credible witness, specifically noting that she "testified extensively about Dr. Crown's contributions to her understanding," even though Dr. Crown examined Petitioner almost two months _after_ Dr. Sultan's last interview with Petitioner. _Id._ at 2457. The court also listed several instances that Dr. Sultan's testimony was not supported by other evidence. _Id._ at 2458-59. As with Dr. Crown, the court noted that the evidence "so resoundingly refutes" Dr. Sultan's opinion that the statutory mental health mitigating factors applied, that her other opinions were discredited as well. _Id._ at 2460.

After the hearing, the trial court denied all of the claims in a detailed order (D21 at 2434-2558). The post-conviction court specifically found that, even considering the additional mitigating factors presented at the evidentiary hearing, the aggravating circumstances far outweighed the mitigating

circumstances (Ex. D21 at 2440).[7]  The court stated that "it was satisfied beyond a reasonable doubt that a sentence of death would have been the result regardless." Id.  Further, in addressing Petitioner's ineffective assistance claims, the post-conviction court concluded that Petitioner could not demonstrate prejudice:

> Further, if the alleged errors are based solely on claims of ineffective assistance of counsel, Mr. Krawczuk has not shown and cannot show (his burden) "prejudice" – that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome, see Strickland v. Washington, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984).  Again, the court is satisfied beyond

---

[7] After listening to the testimony presented at the evidentiary hearing, the court concluded that the state had proven that the murder of David Staker was committed during a robbery and for pecuniary gain (significant weight); the murder was especially heinous, atrocious and cruel (great weight); and the murder was cold, calculating, and premeditated without any pretense of legal or moral justification (great weight).  The court found that no statutory mitigating circumstances had been established.  The court found six non-statutory mitigating circumstances: Petitioner suffered an abusive and emotionally deprived childhood (slight weight); Poirier pleaded to a lesser charge and received a prison sentence (slight weight); there was some evidence of substance abuse/chronic marijuana use (very slight weight); Petitioner was a good worker, hard worker at his maintenance job at McDonalds (slight weight); he had a mental or emotional disturbance less than extreme (moderate weight); and Petitioner cooperated (slight weight).  The court also concluded that even if Petitioner "has organic brain damage that damage as diagnosed, [it] is in the category of a 'mild cognitive disorder' and would not add sufficient weight to the consideration given for Mr. Krawczuk's mental condition to affect the final result of the court's overall weighting of the aggravators and mitigators." (Ex. D21 at 2439).

> a reasonable doubt that a sentence of death
> would have been the result regardless.

Id. at 2440.

Petitioner appealed five issues to the Florida Supreme Court (Ex. D26). Petitioner simultaneously filed a state petition for writ of habeas corpus with the Florida Supreme Court in which he alleged ineffective assistance of appellate counsel (Ex. D29). In a consolidated opinion, the Florida Supreme Court denied all relief. Krawczuk v. State, 92 So. 3d 195 (Fla. 2012) (hereinafter "Krawczuk II").

### III.   Governing Legal Principles

#### A.   Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to,
> or involved an unreasonable application of,
> clearly established Federal law, as determined
> by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. White v. Woodall, 134 S. Ct. 1697, 1702 (2014). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants

deference.  Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).  Notably, a state court's violation of state law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Wilson v. Corcoran, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision.  White, 134 S. Ct. at 1702; Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." Marshall v. Rodgers, 133 S. Ct. 1446, 1449 (2013) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case.  White, 134 S. Ct. at 1706 (quoting Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1).  A decision is "contrary to" clearly

established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406). The unreasonable application inquiry "requires the state court decision to be more than incorrect or erroneous," rather, it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted); Mitchell, 540 U.S. at 17-18; Ward, 592 F.3d at 1155. The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."

<u>White</u>, 134 S. Ct. at 1702 (quoting <u>Harrington v. Richter</u>, 562 U.S. 86 (2011)). Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." <u>Knowles</u>, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>Burt v. Titlow</u>, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.") (quoting <u>Wood v. Allen</u>, 558 U.S. 290, 293 (2010)).

**B.   Standard for Ineffective Assistance of Counsel**

In <u>Strickland v. Washington</u>, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. <u>Id.</u>   This is a "doubly deferential" standard of review that gives both the state

court and the petitioner's attorney the benefit of the doubt. Burt, 134 S. Ct. at 13, (citing Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89. In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." Id. At 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

## IV.  Analysis

### A.  Claim One

Petitioner asserts that he was denied effective assistance of counsel at the penalty phase of his trial (Doc. 1 at 20). Specifically, he claims that LeGrande conducted a less than complete investigation into available mitigation evidence.  He argues:

> Trial counsel's omissions were not the result of any reasonable strategic decision, but instead were based on a wholly inadequate (and indeed non-existent) investigation.  This failure rendered Mr. Krawczuk's putative waiver of mitigation unknowing and involuntary.  The result is that significant mitigation evidence never reached Mr. Krawczuk's sentencing jury.  In fact, the state circuit court determined that Mr. Krawczuk's counsel rendered deficient performance.

(Doc. 1 at 54).

Petitioner raised this issue as claim three of his Rule 3.850 motion, and an evidentiary hearing was held.  The post-conviction court concluded that counsel's performance was deficient for failing to investigate Petitioner's family history to reveal instances of abuse or to "obtain clear direction from Mr. Krawczuk that she was not to do so." (Ex. D21 at 2468).  The post-conviction

court also concluded that counsel's performance was not deficient for failing to investigate the plea agreement reached by Petitioner's codefendant; Petitioner's alleged substance abuse; Petitioner's work ethic; Petitioner's mental or emotional disturbance; or Petitioner's cooperation. Id. at 2469-70.

The post-conviction court further concluded that Petitioner could not demonstrate prejudice from any of counsel's alleged failures (Ex. D21 at 2471). The court noted that Petitioner "has not shown a reasonable probability that if he had been more fully advised about the potential mitigation evidence he would have authorized trial counsel to present such evidence at either the penalty phase trial or at the Spencer hearing. Id. at 2471. The court reiterated:

> [G]ven the strength and weight of these aggravating circumstances, as described by Mr. Krawczuk himself, and supported by other evidence, and the relative weakness of the mitigating circumstances and the evidence Mr. Krawczuk presented in the original and post-conviction proceedings, the court finds there is no reasonable probability that, absent any alleged error or any alleged deficient performance of counsel, whether considered individually or all considered cumulatively, the outcome of the post plea proceedings would have been different (State's burden). The court is satisfied beyond a reasonable doubt that a sentence of death would have been the result regardless.

Id. at 2472; see also discussion supra Part I.

On appeal, the Florida Supreme Court also found no merit in this claim. The Florida Supreme Court recognized that the post-conviction court found LeGrande deficient for failing to discover mitigation related to Petitioner's background, but had determined that Petitioner did not suffer resulting prejudice "because he was emphatic that counsel not contact his family and probably would not have permitted counsel to present the information during the penalty phase." Krawczuk II, 92 So. 3d at 203. Citing extensively from Grim v. State, 971 So. 2d 85 (Fla. 2007) and Waterhouse v. State, 792 So. 2d 1176, 1184 (Fla. 2001), the Florida Supreme court side-stepped the issue of whether LeGrande's performance was deficient in any respect, concluding instead that Petitioner could not establish Strickland prejudice:

> In each of these cases, we concluded that trial counsel could not be deemed ineffective for following their client's wishes not to present mitigation. "An attorney will not be deemed ineffective for honoring his client's wishes." Brown v. State, 894 So.2d 137, 146 (Fla. 2004) (citing Waterhouse, 792 So.2d at 1183); Sims v. State, 602 So.2d 1253, 1257–58 (Fla. 1992)); see also Sims v. State, 602 So.2d 1253, 1257–58 (Fla. 1992) ("[W]e do not believe counsel can be considered ineffective for honoring the client's wishes"). The record demonstrates that Krawczuk would not permit his attorney to involve his family. Accordingly, counsel's ability was limited by the defendant's desire not to include his family. See Brown, 894 So.2d at 146. Therefore, we agree that counsel's actions could not be deemed ineffective. Id.

> It is clear that there was significant
> mitigation available that was not uncovered by
> counsel. However, it is equally clear that
> Krawczuk repeatedly insisted that counsel not
> pursue mitigation and not involve his family.
> Further, the postconviction court found that
> the information that would have been presented
> by the family was available through Dr.
> Keown's report, which Krawczuk also refused to
> allow counsel to present. Because of
> Krawczuk's instructions to counsel not to
> involve his family, we find that Krawczuk
> cannot establish prejudice.

Krawczuk II, 92 So. 3d at 205. Petitioner argues that the Florida Supreme Court's decision is contrary to, or an unreasonable application of, Strickland and that its determination that Petitioner instructed counsel to not pursue mitigation is an unreasonable determination of the facts in light of the evidence presented in the state court proceeding (Doc. 1 at 53) (citing 28 U.S.C. § 2254(d)(2)).

This Court need not address whether counsel performed deficiently because the Florida Supreme Court had a reasonable basis for concluding that Petitioner had not established Strickland prejudice. See Strickland, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

The United States Supreme Court has specifically addressed the situation in which a habeas petitioner alleges that counsel was ineffective for failing to investigate potential mitigation evidence when the petitioner asserted at the state level that he did not want to present a mitigation defense.   In Schriro v. Landrigan, 550 U.S. 465 (2007), Landrigan argued that his counsel was ineffective for failing to interview his biological father and other relatives to confirm that his biological mother had used drugs and alcohol while pregnant. Id. at 471.   The state contended that Landrigan had instructed his counsel not to offer any mitigation evidence. Id. at 479.   The Court determined that "[i]f Landrigan issued such an instruction, counsel's failure to investigate further could not have been prejudicial under Strickland." Id.   Therefore, Landrigan could not demonstrate prejudice because the post-conviction court "reasonably determined that Landrigan instructed his attorney not to bring any mitigation to the attention of the [sentencing] court" and the district court "was entitled to conclude that regardless of what information counsel might have uncovered in his investigation, Landrigan would have interrupted and refused to allow his counsel to present any such evidence." Id. at 477.

The Eleventh Circuit's earlier decision in Gilreath v. Head, 234 F.3d 547 (11th Cir. 2000) is consistent with Landrigan.   In Gilreath, the court determined that a habeas petitioner who

instructed his counsel to present no mitigation evidence during his penalty phase would need to show two things to demonstrate Strickland prejudice:

> First, Petitioner must show a reasonable probability that - if Petitioner had been advised more fully about character evidence or if trial counsel had requested a continuance- Petitioner would have authorized trial counsel to permit such evidence at sentencing. Second, Petitioner must establish that, if such evidence had been presented at sentencing, a reasonable probability exists that the jury "would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." Strickland, 104 S. Ct. at 2069[.]

Id. at 551-52 (citing Mills v. Singletary, 63 F.3d 999, 1026 (11th Cir. 1995); Bolender v. Singletary, 16 F.3d 1547, 1560-61 (11th Cir. 1994); Bush v. Singletary, 988 F.2d 1082, 1090 (11th Cir. 1993))(footnote omitted).  The Gilreath court further explained that to show prejudice, "Petitioner must show that — but for his counsel's supposedly unreasonable conduct — helpful character evidence actually would have been heard by the jury.  If Petitioner would have precluded its admission in any event, Petitioner was not prejudiced by anything that trial counsel did." Id. at 551 n. 12; see also Cummings v. Sec'y for the Dep't of Corr., 588 F.3d 1331, 1360 (11th Cir. 2009)("[T]here cannot be a reasonable probability of a different result if the defendant would have refused to permit the introduction of mitigation evidence in any event.")(citing Strickland, 466 U.S. at 694); Pope v. Sec'y for

the Dep't of Corr., 752 F.3d 1254, 1266 (11th Cir. 2014)("To
establish Strickland prejudice, then, a petitioner who has told
trial counsel not to present mitigation evidence must show a
reasonable probability that, if he had been more fully advised
about the mitigating evidence and its significance, he would have
permitted trial counsel to present the evidence at sentencing.")
(citing Gilreath, 234 F.3d at 551).

The state record is clear that Petitioner was aware of the
necessity of presenting mitigation evidence at trial.  On March
8, 1991, LeGrande wrote a detailed letter to Petitioner in which
she explained the likely aggravating circumstances the state would
seek to prove and the statutory mitigating circumstances which
must be considered (Ex. D19C at 2316-17).  Specifically, LeGrande
stated, "As to mitigation, we can try to use #1, 2, 5, 6, & 8.[8]

---

[8] The statutory mitigating factors, as defined by Florida
Statute § 921.141(6) are as follows:

    (a)  The defendant has no significant history
        of prior criminal activity.

    (b)  The capital felony was committed while
        the defendant was under the influence of
        extreme mental or emotional disturbance.

    (c)  The victim was a participant in the
        defendant's conduct or consented to the
        act.

    (d)  The defendant was an accomplice in the
        capital felony committed by another

Numbers 2, 5, 6, and 8 will depend upon your testimony at trial and the findings of Dr. Keown." <u>Id.</u> at 2317.  Counsel explained:

> Because of the pre-planning of this murder and the pouring of Draino down the victim's throat, and the hiding of the body will probably cause a jury in Fort Myers to come back with a recommendation of death.  Judge Thompson has never sentenced anyone to death at this time, but that does not mean he will not do so.

<u>Id.</u> at 2317.

The record is also clear that Petitioner instructed LeGrande not to present any mitigating evidence to the jury. At his plea colloquy, Petitioner expressed a desire to receive a death sentence (Ex. A3 at 390). The trial court advised Petitioner that he could

---

> person and his or her participation was relatively minor.
>
> (e)  The defendant acted under extreme duress or under the substantial domination of another person.
>
> (f)  The capacity of the defendant to appreciate the criminality of his or her conduct or to conform his or her conduct to the requirements of law was substantially impaired.
>
> (g)  The age of the defendant at the time of the crime.
>
> (h)  The existence of any other factors in the defendant's background that would mitigate against imposition of the death penalty.

Fla. Stat. § 921.141(6) (a)-(h) (1989).

not waive a penalty hearing and that the court was obligated to weigh aggravating and mitigating factors prior to making a final decision. Id. at 390. The court noted that a defendant's request for the death penalty "[i]n all probability it would not enter into the decision as to whether to impose it or not." Id. at 390.

LeGrande informed the court that she had advised Petitioner against entering a guilty plea (Ex. A3 at 405). She said that she and Petitioner had talked about his decision to plead guilty and that he had given the decision "considerable consideration." Id. at 415. LeGrande told the court that she had arranged for mitigation witnesses, but that Petitioner instructed her not to call them. Id. LeGrande explained: "I have told [Petitioner] that I believe it's in his best interest to call these individuals. He has commanded me not to call the individuals." Id. The court expressed concern about Petitioner's desire not to present mitigation evidence, but LeGrande noted that the law provided that a defendant has the right not to call mitigation witnesses. Id. at 405, 407. When asked why he had chosen such action, Petitioner stated that "I just feel it's – I shouldn't be allowed to live for what I did." Id. at 409.

After his plea was accepted, Petitioner sent a letter to LeGrande in which he reiterated his desire to receive the death penalty:

> Do you think my sentencing date of October 29th will remain as such, or will there be a chance for a further delay?  Please keep me updated on it, so I will be prepared on that date.  As for my sentencing hearing, do you feel I can achieve my goal of receiving the death sentence?  From the sounds of it, Mr. Bower is very much for it as well, isn't he?  By my pleading guilty to the charges, doesn't that increase the aggravating circumstances against me, and basically ensure my death penalty?  After all, I am assisting the prosecution in their proving of my total guilt, aren't I?
>
>                     . . .
>
> As far as I'm concerned, you have proven to be a shining example for a lawyer, and I have nothing but praise for you and your work. You have examined each and every aspect, as I have requested.  In fact, I feel that you have done far more than was actually required.  If I have put you in a bind by pleading guilty, it wasn't my intention.  Thank you for remaining as my counsel, through this most critical of all phases.

(Ex. D19C at 2296-97).

A penalty phase commenced on February 4. 1992 (Ex. A1; Ex. A2).  During the penalty phase, the trial court asked Petitioner whether he still wished that no mitigation evidence be offered (Ex. A1 at 190).  Petitioner indicated that he did not want to offer anything in mitigation. Id. at 191. After the close of the state's case, the trial court again asked whether Petitioner had any desire to present a case in mitigation (Ex. A2 at 218).  LeGrande told the court:

> Mr. Krawczuk has advised me, he would have no objection to my making a closing argument for

> the purpose of preventing a reversal on the
> fact that no mitigating circumstances was
> introduced.
>
> However, I advised him in order to argue,
> again, it would be necessary for him to take
> the stand to present the mitigating evidence.
> I can only argue evidence that which has been
> presented from the witness box.  He declines
> to take the witness stand, and I find little
> in the State's evidence that I would be able
> to argue for mitigation.
>
> . . .
>
> Other than the fact, he has pled, which is not
> a mitigating circumstance.  He has then
> instructed me, it's not necessary.  He was
> concerned about reversal if nothing was
> introduced, and he doesn't want to introduce
> any.

Id. at 218-19.  The court pondered whether "it would probably

still be possible to make some kind of argument based on – I don't

know if you wish to do so – or wish to think about that or what."

Id. at 219. Counsel replied:

> I don't think [Krawczuk] wants to present
> mitigating circumstances.  From what I
> understand from him, he only just wants to
> make sure that everything is appropriate for
> the appellate process, so there wouldn't be a
> reversal.

(219). The court questioned Petitioner.

> COURT:        What is your position as far as
>               having your attorney present
>               any mitigating evidence?
>
> PETITIONER:   I am willing to let her do it,
>               but I am not willing to get on
>               the stand myself, because I am
>               just opposed to that idea.
>               But I don't know.

> COURT:     Have you discussed any other
>            mitigating evidence that might
>            be presented that you could –
>            I don't know if at this point
>            you could introduce the
>            psychiatric report for
>            whatever benefit that may
>            have?
>
> LEGRANDE:  I am willing to do that, but I
>            don't know if the State would.
>
> PETITIONER: Not the whole thing, but part
>            of it would be good.
>
> COURT:     You can talk it over with your
>            lawyer.  It would probably be
>            all or nothing at best.  I am
>            not sure how the State's
>            position might be or how I
>            might rule on that.

(Ex. A2 at 220). The state objected to the introduction of any
portion of Dr. Keown's psychiatric report because it would be
unable to call rebuttal witnesses. Id. at 222-23.  The State
queried whether Petitioner "really wanted anything offered on his
behalf or is he not going to want anything admitted on his behalf?"
Id. at 224. LeGrande stated:

> Mr. Krawczuk has just indicated to me that his
> desire to have this admitted has nothing to do
> with attempting to sway the jury on mitigating
> circumstances.   He is not looking for
> mitigation.  It's still his desire to have the
> death penalty imposed.  He is just attempting
> to prevent tying my hands to the point of
> presenting his case that the Appellate Court
> would overturn a death penalty.

Id. at 224-25.  The court agreed to admit Dr. Keown's psychiatric
report. Id. at 229.  The state told the court that "if [the mental

health report is] going to be admitted, I am going to refer to certain items in there verbally." Id. at 229.  Petitioner then told counsel that he did not want the psychiatric report admitted:

LEGRANDE:   Mr. Krawczuck indicates he does not want it admitted.

COURT:   All right, is that your final word on the matter, Mr. Krawczuk?

PETITIONER:   Yes, it is.

COURT:   Okay.  Now it's my understanding, at this point at least, that you do not want to present any mitigating evidence, and that you do not want, yourself, to testify as to additional mitigating evidence; is that correct?

PETITIONER:   Yes, it is.

COURT:   And we have been all through this thing, and I think you have a pretty good understanding of the trial process, but you understand the consequences of that you may well expose yourself to the death penalty or at least a recommendation by this jury that you get a death penalty.

PETITIONER:   Yes, sir.

COURT:   What about final argument, will there be non or –

LEGRANDE:   There won't be any final argument, Your Honor.

COURT:   All right, are you going to tell the jury that in some

|  |  |
|---|---|
|  | fashion, have you thought about that? |
| LEGRANDE: | I think I am just going to waive final argument and I am advising the Court that is what my client is wanting me to do. |
| COURT: | Is that correct? |
| PETITIONER: | That is correct. |
| COURT: | Are you directing your attorney to take no further action on your behalf as far as final argument or presentation of any further evidence? |
| PETITIONER: | After discussion, that is about all I can do. |
| LEGRANDE: | For the purposes he has outlined, that is what he has indicated.  He has his own reasons, he didn't want Dr. Keown's report introduced.  He has his own reason why he doesn't want the final argument, which we have discussed, and I have attempted to dissuade him on that approach, but – |
| COURT: | Are those reasons that are appropriate to put on the record? |
| LEGRANDE: | No, sir, they are very personal reasons to him. |
| COURT: | Does she speak correctly? |
| PETITIONER: | Yes, sir. |

Id. at 230-31.  After hearing closing argument from the state, the

jury unanimously recommended death (Ex. A2 at 268; Ex. A5 at 584).

At the Spencer hearing, counsel told the court that she intended to offer Petitioner's psychiatric report into evidence, but that Petitioner did not want her to do so (Ex. A3 at 430). Petitioner was asked whether he wished to have the court consider anything in reference to his sentence, but Petitioner declined. Id.

At the post-conviction evidentiary hearing on this claim, LeGrande testified that Petitioner told her that he did not want her to present mitigation evidence on his behalf (Ex. D18 at 1778). He did not want to testify or allow her to "present anything about what occurred. And he didn't want [her] to cross-examine witnesses, or anything else." Id. at 1788.  She reiterated:

> Okay, and we have had discussions on that, so, um, as I indicated at the time, Mr. Krawczuk indicated he wanted to plead guilty and he wanted the death penalty.  He did not even want a sentencing phase.  But that was forced upon him.  Did not want me to cross-examine witnesses.  Did not want me to present any evidence.  Did not want me to make any closing arguments.  And, at sentencing, did not want anything added at that time.

Id. at 1806.  She stated that if Petitioner had allowed her to do so, she would have looked at other doctors and explored other issues. Id. at 1785.  She may have looked for a neuropsychologist. Id. at 1786.  She would have secured more experts at the penalty phase if Petitioner had not expressly asked her not to do so. Id. at 1826, 1829.  After LeGrande was examined by the state and by

Petitioner's post-conviction counsel, the following exchange

occurred between LeGrande and the court:

> COURT:      I've got a couple of questions,
>             which is always frightening.  I
>             think it's in my notes, but I'm not
>             exactly sure.
>
>             Was there some point in your
>             representation of [Petitioner] when
>             he actually said he didn't want you
>             to do anything?
>
> LEGRANDE:   At the – at the – Yes, he came in
>             and he entered a plea, and he asked
>             at that time that he wanted the
>             death penalty.
>
> COURT:      Um-hmm.
>
> LEGRANDE:   And you informed him that you had to
>             have the mitigation stage.  And, as
>             I remember it, during the mitigation
>             phase trial, um, after each witness
>             I would confer with him, and I would
>             announce to the Court, "I have no
>             questions because – at the request
>             of my client." And he did not want
>             me to pursue.
>
>             I then, after that was over, and
>             they came back with the
>             recommendation, I also indicated to
>             him that he still could present
>             evidence to you at the sentencing.
>             And that he did not want that.  So
>             I did not pursue anything else.
>
> COURT:      But it was – it was up through the
>             plea, and then it was either shortly
>             at that time, or shortly after, that
>             he indicated that he didn't want the
>             penalty phase evidence?
>
> LEGRANDE:   At the plea, he indicated that he
>             did not even want to wait for a
>             penalty, he wanted you to sentence

him, I believe.   And then, after
that, he did not want any –

Well, he was not cooperative with me
on getting—

COURT:        Um-hmm.

LEGRANDE:     –I  information  about  family  and
those  type  of  things  to  talk  to.
Um, he kind of wanted to leave his
family out of it.

But I did get calls from, according
to my records, from his mother and
his grandmother.

(D18 at 1829-31).   Petitioner did not testify at the evidentiary

hearing.  Id. at 1833.

The  state  court  reasonably  concluded  that  Petitioner  gave

LeGrande  unmistakable  instructions  not  to  present  mitigation

evidence.   Therefore, in order to establish Strickland prejudice,

Petitioner  must  demonstrate  both:  (1)  a  reasonable  probability

that  he  would  have  authorized  LeGrande  to  present  mitigation

evidence  if  had  been  more  fully  advised  about  the  available

evidence; and (2) a reasonable probability that his evidence would

have  convinced  a  jury  that  the  death  penalty  was  unwarranted based

on  the  aggravating  and  mitigating  factors.   Pope, 752 F.3d at 1266

(citing  Landrigan, 550 U.S. at 475-77; Strickland, 466 U.S. at

694; Gilreath, 234 F.3d at 551-52).   Petitioner cannot meet the

first of these requirements.

Nothing  in  the  record  suggests  that  Petitioner  would  have

changed his directions to counsel had he been more fully informed

about mitigating evidence.   Petitioner argues that Strickland does not require that he make such a showing (Doc. 30 at 17).   This Court does not agree.   A petitioner bears the burden of proof on the performance prong as well as the prejudice prong of a Strickland claim. See Williams v. Allen, 598 F.3d 778, 789 (11th Cir. 2010).   Moreover, the Eleventh Circuit, has specifically held that in order to show prejudice, the *petitioner* "must affirmatively establish that, despite his instructions to his attorney and his comments to the court, there is a reasonable probability that he would have allowed mitigation evidence about his mental health or personal history to be presented if properly advised." Pope, 752 F.3d at 1254.   Just as the petitioner in Pope, Petitioner has "offered no affidavit, deposition, or statement from himself, his counsel, or even from his mental health experts claiming that [he] would have changed his instructions to counsel if advised of mitigation evidence." Id. at 1267.

Petitioner argues that he has not refused to cooperate with post-conviction counsel and has been cooperative with his post-conviction mental health experts (Doc. 30 at 18).   Presumably then, Petitioner asks this Court to infer from his lack of obstruction during his post-conviction proceedings, that there is a reasonable probability that he would have allowed mitigation evidence about his mental health or personal history to be presented at his penalty phase of his trial or at the Spencer

hearing.    "This   argument   ignores   [Petitioner's]   explicit statements to the contrary and reverses his burden." Pope, 752 F.3d at 1267.   Petitioner has not affirmatively established that, despite his repeated assertions otherwise, he would have allowed mitigation   to   be   presented   had   he   been   properly   advised. Accordingly, the Florida Supreme Court had a reasonable basis to deny relief, and Petitioner is not entitled to federal habeas relief on Claim One.

### B.  Claim Two

Petitioner asserts that trial counsel was ineffective for failing   to   "object   to   improper   prosecution   arguments   and comments[.]" (Doc. 1 at 92).   Specifically, he urges that counsel was   ineffective   for:   (1)   not   objecting   to   the   prosecutor's statements during voir dire in which he "asked the jury if they could decide the case without regard to sympathy . . . and told the jurors that it was their duty to follow the law they were instructed on, or be responsible for a miscarriage of justice"; (2)   not   objecting   to   the   prosecutor's   statements   during   final argument that "the 'legal' recommendation for them to make was death."; (3) failing to request a specific instruction on mercy as a consideration in the penalty phase of a capital trial; and (4) not objecting to the prosecutor's comments on Petitioner's lack of remorse.   Id. at   92-95.   Each   subclaim   will   be   addressed separately.

      **1.   Counsel was not ineffective for failing to object to the prosecutor's statements during voir dire**

Petitioner asserts that counsel was ineffective for failing to object when the prosecutor asked the prospective jurors if they could decide the case without regard to sympathy (Doc. 1 at 93). Specifically, he points to the prosecutor's following statements to the prospective jury:

> This case is going to raise a lot of emotion in you, and maybe even sympathy feelings. Maybe sympathy feelings for Mr. Krawczuk, sympathy feelings for a person who was killed in this case, a person by the name of David Staker.  Anybody know David Staker?
>
>        . . .
>
> Do all of you realize that sympathy, either for the victim in this case, David Staker, or for the Defendant, Anton Krawczuk – the judge will tell you feelings of sympathy do not and should not be a part of your deliberations.
>
> And do all of you think you can set aside any feelings of sympathy you may have for either Mr. Krawczuk or Mr. Staker or Mr. Staker's family?

(Ex. A8 at 769-70).  Another discussion was had with members of the panel when a prospective juror expressed that she would have difficulty setting aside feelings of sympathy for the victim. <u>Id.</u> at 811-14. The prosecutor told the jury that any decision must be based only on evidence. <u>Id.</u> at 813.  The prosecutor queried and explained:

> Does anyone here feel that they would not be able to attempt to set aside feelings of sympathy or hatred or whatever else may come

> up, and base your decision solely on the
> evidence and the law as the Judge gives it to
> you?  Everyone here think they can try to do
> that?
>
> Okay.  Because it would not be fair to the
> State of Florida, and it would not be fair to
> Mr. Krawczuk if you didn't try to do that.
> Does everybody understand that?

(813-14).  Petitioner claims that "[t]he prejudicial effect of the

state's actions were further exasperated by the trial court's

instruction to the jury that sympathy should play no part in their

decision." (Doc. 1 at 94).[9]

The post-conviction court denied this claim, noting that any

claim of trial court error was procedurally barred because it was

not raised on appeal.[10]  The post-conviction court then concluded

that there was no error because similar anti-sympathy instructions

have been approved by the United States Supreme Court (Ex. D21 at

528) (citing <u>California v. Brown</u>, 479 U.S. 538 (1987); <u>Saffle v.</u>

<u>Parks</u>, 494 U.S. 484 (1990)).  The court also noted that, subsequent

---

[9] As part of the court's instructions to the jury, it
stated:
> Number five, feelings of prejudice, bias or
> sympathy are not legally reasonable doubts and
> they should not be discussed by any of you in
> any way.  Your verdict must be based on your
> views of the evidence and on the law contained
> in these circumstances.

(Ex. A2 at 255).

[10] Petitioner raises the instant claim as only a claim of
ineffective assistance of counsel.

to Petitioner's trial, the Florida Supreme Court approved death penalty cases including "virtually the same anti-sympathy instruction." Id.  Finally, the post-conviction court rejected Petitioner's assertion that his sentence was unreliable because "the judge believed Florida law precluded considerations of sympathy and mercy."  The post-conviction court noted that the only support for Petitioner's assertion was that the court read "what had now become the current standard instruction in penalty proceedings." Id.

Petitioner appealed the post-conviction court's denial of this claim (Ex. D6).  The Florida Supreme Court concluded that "we find no deficiency where counsel was not permitted to participate in the proceedings." Krawczuk II, 92 So. 3d at 195.  The Florida Supreme Court further noted:

> [A] defendant is "not prejudiced by the improper statements of the prosecutors [where] the juries were given the proper instructions for analyzing aggravating and mitigating circumstances." [Anderson v. State, 18 So. 3d 501, 517 (Fla. 2009)].  As noted by the post-conviction court, the record indicates that the jury was properly instructed. Accordingly, we find that Krawczuk has not demonstrated prejudice.

Krawczuk, 92 So. 3d at 207.  Finally, the Florida Supreme Court determined that counsel was not ineffective for failing to object to the standard jury instruction which stated that "[t]his case must not be decided for or against anyone because you feel sorry

– 39 –

for anyone or are angry at anyone. Fla. Std. Jury Instr. (Crim.) 3.10." Id. at 205.

Petitioner now argues that Petitioner's instructions regarding LeGrande's participation in the penalty phase "were not unwaivering" and that Petitioner did not "have the authority or ability to instruct his attorney to object or not to object." (Doc. 1 at 96). Petitioner asserts that the Florida Supreme Court's decision was contrary to Mills v. Maryland, 486 U.S. 367 (1988) and Franklin v. Lynaugh, 487 U.S. 164 (1988). Specifically, he claims that the jury was left with the impression that mercy could not be considered when determining Petitioner's sentence (Doc. 1 at 95). Petitioner's arguments do not entitle him to federal habeas relief.[11]

---

[11] These cases do not lend support to Petitioner's claims. The petitioner in Mills argued that the court's instructions and verdict slip served "to require the imposition of a death sentence if the jury unanimously found an aggravating circumstance, but could not agree unanimously as to the existence of any particular mitigating circumstance." 486 U.S. at 371.  The Supreme Court vacated Mills' sentence because the jurors "well may have thought they were precluded from considering mitigating evidence unless all 12 jurors agreed in the existence of a particular such circumstance." Id. at 384.  Petitioner does not now allege that the court instructed the jury that it must agree unanimously on mitigation factors.

In Franklin, the Supreme Court rejected a petitioner's challenge to the Texas jury instructions in capital cases because the instructions did not preclude "jury consideration of any relevant mitigating circumstances in this case, or otherwise unconstitutionally limited the jury's discretion[.]" 487 U.S. at 183.  Similarly, in the instant case, Petitioner's sentencing

As discussed in Claim One, supra, based upon the record, the Florida Supreme Court reasonably concluded that Petitioner instructed LeGrande not to participate in the penalty phase of his trial. Accordingly, the Florida Supreme Court reasonably concluded that LeGrande's performance could not be deficient for failing to do so. See Roberts v. Dretke, 356 F.3d 632, 638 (5th Cir. 2004) (noting that defendant may not obstruct his attorney's efforts, then claim ineffective assistance of counsel); Owens v. Guida, 549 F.3d 399, 412 (6th Cir. 2008) ("A defendant cannot be permitted to manufacture a winning IAC claim by sabotaging her own defense, or else every defendant clever enough to thwart her own attorneys would be able to overturn her sentence on appeal.").

In addition, Petitioner has not provided grounds on which LeGrande could have objected to the prosecutor's statements or to the jury instructions. The Florida Supreme Court has rejected similar claims regarding the role of sympathy in a jury's consideration of mitigation. See Zack v. State, 753 So. 2d 9, 23-24 (Fla. 2000) ("[T]he State's argument concerning sympathy was a proper admonition for the jurors to consider the mitigation evidence without resort to their emotions.")(footnote omitted); Gonzalez v. State, 136 So. 3d 1125, 1158 (Fla. 2014) (rejecting a defendant's claim regarding jury instructions on the role of

---

court did not give any jury instruction limiting the jury's discretion to consider all mitigating factors.

sympathy); see also Saffle v. Parks, 494 U.S. 484, 489 (1990) (the Eighth Amendment does not require that jurors be allowed to base its sentencing decision upon sympathy it feels for the defendant). Although each of these cases was decided after Petitioner's penalty phase trial, the courts' subsequent rejections of similar "sympathy" arguments, combined with the lack of authority allowing or requiring a jury to use sympathy to guide its deliberations, indicates that any objection by counsel would have been futile. Counsel's performance is not deficient for failing to make a futile objection. Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001) (counsel is not ineffective for failing to raise a non-meritorious objection); James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994) (counsel's failure to make futile motions does not constitute ineffective assistance)

Moreover, when viewed in context, the anti-sympathy statements made by the prosecution and the court appeared to be directed towards ensuring that the jury's recommendation was not based upon sympathy for the victim. Even had counsel not been constrained from making an objection to the "sympathy" comments, reasonable counsel could have concluded that it was not in Petitioner's best interests to do so. See Castillo v. Sec'y, Fla. Dep't of Corr., 722 F.3d 1281, 1285 n.2 (11th Cir. 2013)("The relevant question under Strickland's performance prong, which calls for an objective inquiry, is whether any reasonable lawyer

could have elected not to object for strategic or tactical reasons, even if the actual defense counsel was not subjectively motivated by those reasons.").

### 2. Counsel was not ineffective for failing to request a jury instruction on mercy

Petitioner's claim that LeGrande provided ineffective assistance by failing to request a specific "mercy" instruction is without merit. In Boyde v. California, the Supreme Court concluded that the legal standard for reviewing jury instructions claimed to restrict a jury's consideration of relevant mitigating evidence is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence. 494 U.S. 370, 378-80 (1990).

The trial court did not issue any instruction that prevented the jury's consideration of mitigation evidence.  To the contrary, the trial judge specifically instructed the jury that they were to consider, as possible mitigation, "any other aspect of the defendant's character or record, or any other circumstance of the offense." (Ex. A2 ta 257).  The instructions did not prevent jurors from giving meaningful consideration to any mitigating factor, including their feelings of mercy for Petitioner. Accordingly, Petitioner cannot demonstrate Strickland prejudice from counsel's failure to request a separate jury instruction on mercy. See Downs

v. Moore, 801 So. 2d 906, 913 (Fla. 2001) ("[T]he 'catch-all' standard jury instruction on nonstatutory mitigation when coupled with counsel's right to argue mitigation is sufficient to advise the jury on nonstatutory mitigating circumstances."); Zakrzewski v. State, 717 So. 2d 488, 495 (Fla. 1998) ("[T]he trial court is only required to give the 'catch-all' instruction on nonstatutory mitigating evidence."); Correll v. Dugger, 558 So.2d 422, 425 (Fla. 1990) (appellate counsel not ineffective for failing to argue on appeal that trial court had failed to give a specific penalty phase instruction that the jury could consider mercy during the course of its deliberations).

> **3. Counsel was not ineffective for failing to object to the prosecutor's statements indicating that the law required the jury to recommend the death penalty**

Petitioner asserts that "the prosecution suggested to the jury during its final argument that the law required them to recommend the death penalty (Doc. 1 at 93). Petitioner directs the Court to three specific statements made by the prosecutor:

> I know it's not an easy situation you have been placed in, in fact it's probably one of the most difficult you have been placed in. But I submit to you, **your decision in this case will not be a difficult one, legally, for to you [sic] make.**
>
> Of course, it will be a difficult one for you to make, personally, because it effects the outcome of a human being, Anton Krawczuk. Remember that you all indicated during voir

dire, that both the State as well as Mr. Krawczuk deserve a fair trial.

You have also indicated you would follow the law as the Judge gives it to you.  And I submit to you that you are going to find, once the Judge has instructed you on the law, that the State has met its burden of proof, and we have proven beyond and to the exclusion of a reasonable doubt aggravating circumstances that warrant the imposition of the death penalty against Anton Krawczuk.

Now as the Judge is going to instruct you, if you do find there are aggravating circumstances, you will next then look to see whether or not there are any mitigating circumstances.  This is not a numbers game. This is the weight.  **If you have one aggravating circumstance, and you find that there are mitigating circumstances, if that one outweighs all of the mitigating, you are still legally required to return a recommendation that the death penalty be imposed.**

. . .

And I submit to you, ladies and gentlemen of the jury, that the evidence in this case is clear.  There was a heinous and atrocious, premeditated plan to kill Mr. Staker and to take his property.  **And I ask you to take your oath seriously, to look at the evidence seriously, and to return a legal recommendation to this Court**, and that recommendation, I submit to you, should be that Anton Krawczuk should be put to death, thank you.

(Ex. A2 at 232-33, 255).  Petitioner argues that the law "never requires that a death sentence be imposed.  What the law requires is for the jury to consider the evidence introduced in the guilt

and/or penalty phases of a trial and recommend an appropriate sentence." Id. at 93.

Petitioner raised this claim in his Rule 3.850 motion where it was denied by the post-conviction court.   The Florida Supreme Court affirmed as follows:

> Krawczuk argues that at trial the prosecutor made several erroneous remarks that led the jury to believe that they had no choice but to return a recommendation for the death sentence. Krawczuk further argues that the trial court improperly instructed the jury, which compounded this error.   Finally, Krawczuk argues that trial counsel was ineffective for her failure to object or otherwise attempt to correct these errors. Each of these claims must fail.
>
> Turning to the prosecutor's remarks, Krawczuk claims that during voir dire and closing arguments, the prosecutor suggested that the law required the jury to recommend the death penalty if the aggravating circumstances outweighed the mitigating circumstances. Additionally, Krawczuk argues that the prosecutor suggested on multiple occasions that the jury should decide the case without regard for sympathy. The postconviction court correctly concluded that the claim was procedurally barred because trial counsel failed to object to the comments and the issue was not raised on direct appeal, nor did the remarks constitute fundamental error. See Rogers v. State, 957 So.2d 538, 547 (Fla. 2007) ("We have consistently held that substantive claims of prosecutorial misconduct could and should be raised on direct appeal and are thus procedurally barred from consideration in a postconviction motion.") (citations and internal quotations omitted); Lamarca v. State, 931 So.2d 838, 851 n. 8 (Fla. 2006).

As for Krawczuk's claim that counsel was
ineffective for failing to object to these
remarks, we find no deficiency where counsel
was not permitted to participate in the
proceeding. As it relates to the prosecutor's
comments regarding the jury's recommendation,
we have said:

> Florida law provides that a penalty phase
> jury, after deliberating, shall render an
> advisory sentence to the court. That
> sentence is to be based on:
>
> (a) Whether sufficient aggravating
>     circumstances exist...
>
> (b) Whether sufficient mitigating
>     circumstances exist which outweigh
>     the aggravating circumstances found
>     to exist; and
>
> (c) Based on these considerations,
>     whether the defendant should be
>     sentenced to life imprisonment or
>     death.
>
> § 921.141(2)(a), Fla. Stat. (2008). "[A]
> jury is neither compelled nor required to
> recommend death where aggravating factors
> outweigh mitigating factors." Cox v.
> State, 819 So.2d 705, 717 (Fla. 2002)
> (quoting Henyard v. State, 689 So.2d 239,
> 249-50 (Fla. 1996)).

Anderson v. State, 18 So.3d 501, 517 (Fla.
2009). Further, we found that a defendant is
"not prejudiced by the improper statements of
the prosecutors [where] the juries were given
the proper instructions for analyzing
aggravating and mitigating circumstances."
Anderson, 18 So.3d at 517. As noted by the
postconviction court, the record indicates
that the jury was properly instructed.
Accordingly, we find that Krawczuk has not
demonstrated prejudice.

Krawczuk II at 206-07.   The Florida Supreme Court reasonably concluded that LeGrande's performance was not deficient because she was not permitted to participate in Petitioner's penalty proceedings.   See discussion supra Claim One.

In addition, the Florida Supreme Court reasonably concluded that Petitioner cannot demonstrate prejudice from the prosecution's inaccurate statements about Florida's weighing process because the trial court instructed the jury that it was to follow the law as given in his instructions (Ex. A2 at 254, 255). Petitioner does not argue that the jury instructions read by the trial court are inconsistent with the law.   Rather, he complains that the jury did not receive an additional, separate instruction on "mercy" in light of the prosecutor's misstatements regarding the jury's legal requirements (Doc. 1 at 93).   The Florida Supreme Court was entitled to conclude that a separate instruction was not necessary and that the court's jury instruction requiring the jury to "consider all the evidence tending to establish one or more mitigating circumstances, and give that evidence such weight as you feel it should receive in your reaching your conclusion as to the sentence that should be imposed" adequately cured any harm from the prosecutor's earlier misstatements (Ex. A2 at 257).   See Johnson v. Alabama, 256 F.3d 1156, 1184 (11th Cir. 2001) ("[E]ven if we assumed performance error, any prejudice to Johnson was cured by the trial court's jury instructions."); Shriner v. Wainwright,

715 F.2d 1452, 1459 (11th Cir. 1983) ("[W]ith a properly instructed jury, there is nothing to show the jury relied on the prosecutor's remarks."); Darling v. Sec'y, Dep't of Corr., 619 F.3d 1279, 1282 (11th Cir. 2010) (Florida Supreme Court reasonably concluded that the trial court's correct jury instructions cured prosecutor's misstatement of the law). The Florida Supreme Court's decision was a reasonably application of Strickland's prejudice prong. See also discussion Claim II(1),(2).

### 4. Counsel was not ineffective for failing to argue that lack of remorse is not an aggravating factor

Petitioner asserts that "the prosecutor exceeded the boundaries of proper argument during his closing argument when he discussed Mr. Krawczuk's alleged lack of remorse as an aggravator." (Doc. 1 at 95). Specifically, Petitioner points to a portion of the state's closing argument in which the prosecutor urged that the state had satisfied its burden of showing the murder of David Staker was committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification (Doc. 1 at 95). The prosecutor described a portion of Petitioner's taped confession as follows:

> Ladies and gentlemen, you listen to that tape.
> This person, Mr. Krawczuk, delivered that in
> a cold manner. To use one of his words from
> the taped statement, it was "clinical." There
> was no remorse in his voice. Yeah, I planned
> it out. Yeah, we took gloves. Yeah, I
> strangled him to death. I listened to him
> gurgle. I poured Vanish down his throat. And

> a stuffed a rag in his mouth with the help of
> my buddy.  I took him to a prearranged site
> and dumped his body.
>
>                    .  .  .
>
> And when his buddy, William says, "I think I
> might get sick", Krawczuk says, "Don't get
> sick  now."   That  wasn't  bothering  Mr.
> Krawczuk.  His plan was all coming together.
> He was exterminating David Staker.  And what
> else does he say that shows you his total lack
> of remorse and total indifference to the life
> of David Staker?

(Ex. A2 at 243, 246).  Petitioner argues that lack of remorse is

not an aggravating factor that can be considered under Florida law

and that LeGrande was ineffective for failing to object to the

introduction and consideration of non-statutory aggravators." Id.

(citing Kimmelman v. Morrison, 477 U.S. 365 (1986)).[12]

Petitioner raised this claim in his Rule 3.850 motion, and

the post-conviction court determined that LeGrande's performance

was  not  deficient  because  Petitioner  instructed  her  not  to

participate in the penalty phase proceedings (Ex. D21 at 2526).

The post-conviction court further concluded that the prosecutor's

"brief and isolated references to lack of remorse are of minor

consequence and harmless beyond a reasonable doubt." Id.  Finally,

the court noted that the prosecutor made it clear that only three

---

[12]  In  Kimmelman,  the  petitioner  raised  an  ineffective
assistance of counsel claim based on his trial counsel's failure
to timely file a motion to suppress evidence allegedly obtained in
violation of the Fourth Amendment.  477 U.S. at 365.  Kimmelman,
was not a death penalty case and has no bearing on this claim.

aggravating circumstances were at issue and that the trial court instructed the jury that it was limited to considering only those three aggravating circumstances. Id. at 257. Petitioner appealed the denial to the Florida Supreme Court (Ex. D26). The Florida Supreme Court made no written finding on this claim.

Petitioner cannot demonstrate prejudice because both the prosecutor and the trial judge told the jury that it was to consider only three aggravating factors: (1) whether the crime was committed while Defendant was engaged in a robbery; (2) whether the crime was especially wicked, evil, atrocious, or cruel; and (3) whether the crime was committed in a cold, calculated and premeditated manner without any pretense of moral justification (Ex. A2 at 233, 235, 237, 255). Juries are presumed to follow instructions. Jamerson v. Sec'y, Dep't of Corr., 410 F.3d 682, 690 (2005). Finally, Florida courts have consistently found that a prosecutor's isolated reference to a defendant's lack of remorse constitutes harmless error. See Floyd v. State, 808 So. 2d 175, 185 (Fla. 2002)("Even if appellate counsel had raised this issue on appeal we would have concluded that the prosecutor's isolated reference to Floyd's lack of remorse during the State's closing argument constituted harmless error."); Shellito v. State, 701 So.2d 837, 842 (Fla. 1997) (brief reference to lack of remorse constituted harmless error).

Given that the error, if any, complained of was harmless, Petitioner cannot demonstrate prejudice from counsel's failure to object. See Boland v. Sec'y, Dep't of Corr., 278 F. App'x 876, *4 (11th Cir. 2008) (it was reasonable for the state courts to conclude that Boland was not prejudiced because the error of which he complained was harmless); Johnson v. Blackburn, 778 F.2d 1044, 1050 (5th Cir. 1985) ("If an error is shown to be harmless, then the error cannot satisfy the prejudice prong of Strickland.").

The state court's denial of relief on each of the sub-claims raised in Claim Two was not contrary to or an unreasonable application of Strickland, and Petitioner is not entitled to relief. 28 U.S.C. § 2254(d).

## C. Claim Three

Petitioner asserts that he is innocent of the death penalty because co-defendant William Poirier received a disparate sentence (Doc. 1 at 97). Specifically, Poirier pleaded guilty to second degree murder after Petitioner's conviction and sentence. Id. at 97-98. Poirier was sentenced to 35 years in prison on the murder charge and a concurrent term of 15 years in prison on the robbery charge. Id. at 98. Petitioner cites Sawyer v. Whitley, 505 U.S. 333 (1992) for the proposition that "he is entitled to relief for constitutional errors which resulted in the conviction or sentence of death." (Doc. 1 at 97).

Petitioner raised this claim in his Rule 3.850 (Ex. D26), and it was rejected by the post-conviction court on three separate grounds: (1) Petitioner and Poirier were not convicted of the same offense; (2) the claim was procedurally barred because it had already been considered and rejected in the original appeal; and (3) Petitioner was more culpable than Poirier (Ex. D21 at 2479). The Florida Supreme Court also rejected the claim on the grounds that the claim was procedurally barred, Poirier received a lighter sentence because he pleaded guilty to second-degree murder, and Petitioner was the more culpable of the two. Krawczuk II, 92 So. 3d at 207-08.[13]

---

[13] Despite the post-conviction court's conclusion that the issue "was considered and rejected" on direct appeal, the records are not clear on this matter.  Petitioner did not raise this issue as a separate claim in his brief on direct appeal (Ex. A9).   In Krawczuk I, the Florida Supreme Court summarized, in a footnote, the trial court's conclusions regarding Petitioner's relative culpability:

> The court found no disparate treatment between Krawczuk and Poirier, noting that Krawczuk "scouted the site to dispose [of] the body, made the arrangements with the victim to go to his house, physically strangled the victim with the co-defendant's assistance, placed the drain cleaner in the victim's mouth and steadied the co-defendant when he was on the point of becoming sick" and that the psychiatrist thought Krawczuk was overstating when he said he had been influenced by Poirier. Additionally, Krawczuk was older and bigger than Poirier.

634 So. 2d at 1074 n.5.  In Krawczuk I, he Florida Supreme Court made no comment on whether it agreed with the trial court's

Although Petitioner presents Claim Three as a constitutional claim, the Supreme Court has never required a state court to compare the culpability and sentences of co-defendants in capital cases. To the contrary, the Supreme Court has determined that absent a showing that a system operated in an arbitrary and capricious manner, a petitioner "cannot prove a constitutional violation by demonstrating that other defendants who may be similarly situated did *not* receive the death penalty." McCleskey v. Kemp, 481 U.S. 279, 306-07 (1987) (emphasis in original); see also Williams v. Illinois, 399 U.S. 235, 243 (1970) ("The Constitution permits qualitative differences in meting out punishment and there is no requirement that two persons convicted of the same offense receive identical sentences."); Pulley v.

---

findings on Petitioner's and Poirier's relative culpability; the note was made in regards to Petitioner's argument that the trial court erred when it failed to find the existence of nonstatutory mitigators. Id. at 1073.

In Krawczuk II, the Florida Supreme Court suggested that Petitioner did not raise the issue on direct appeal by stating that, "[a]ppellate counsel did mention Poirier's sentence in the initial brief, although not as a distinct issue." Krawczuk II, 92 So. 3dat 209. The Florida Supreme Court also noted that "[b]ecause this claim was, or should have been, raised on direct appeal, the lower court correctly found that it was procedurally barred." Id. at 207 (noting that the issue *had* been addressed in a footnote in its original order on Petitioner's direct appeal). Because this claim fails on the merits, this court need not address whether it is also unexhausted. See 28 U.S.C. § 2254(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Harris, 465 U.S. 37, 50-51 (1984) ("There is thus no basis in our cases for holding that comparative proportionality review by an appellate court is required in every case in which the death penalty is imposed and the defendant requests it.").

Moreover, the Florida Supreme Court has spoken directly to Petitioner's claim that Poirier was the more culpable of the two murderers.   Affirming the denial of Petitioner's Rule 3.850 motion, the Florida Supreme Court found Petitioner, not Poirier, to be the more culpable party:

> As summarized by the lower court's findings: (1) Krawczuk met the victim six months before the incident and started going to the victim's house three months prior, but Poirier had only been with Krawczuk to the victim's house one time prior to the murder; (2) Krawczuk initiated the events by suggesting they go to the bedroom, he initiated the roughhousing, he pinned the victim down, choked him, poured Crystal Vanish down the victim's throat, and poured water in; and (3) Krawczuk was older and bigger than Poirier, more aggressive, and Poirier was called Krawczuk's protégé. See Krawczuk, 634 So.2d at 1074 n. 5 ("Krawczuk 'scouted the site to dispose [of] the body, made the arrangements with the victim to go to his house, physically strangled the victim with the co-defendant's assistance, placed the drain cleaner in the victim's mouth and steadied the co-defendant when he was on the point of becoming sick' and ... the psychiatrist thought Krawczuk was overstating when he said he had been influenced by Poirier. Additionally, Krawczuk was older and bigger than Poirier.").

Krawczuk II, 92 So. 3d at 207-208.   Even if this proportionality claim were cognizable in federal habeas, the findings of the

Florida Supreme Court are neither contrary to, nor an unreasonable application of, clearly established federal law.    Nor has Petitioner presented clear and convincing evidence showing that the state court's conclusion that Petitioner was more culpable than Poirier was an unreasonable determination of the facts.    To the extent, Petitioner asserts that the Florida Supreme Court misapplied *state* law in its adjudication of this claim, "[a] federal court may not issue the writ on the basis of a perceived error of state law." <u>Harris</u>, 465 U.S. at 41.

Petitioner is not entitled to federal habeas relief on Claim Three.

### D.   Claim Four

Petitioner asserts that the trial court erred by failing to properly consider and weigh mitigation evidence (Doc. 1 at 100). Petitioner asserts:

> The Eighth Amendment forbids a sentencer in a capital case from refusing to consider any relevant mitigating evidence presented by the defendant, nor can it give such mitigating evidence no weight by excluding it from consideration. <u>Eddings v. Oklahoma</u>, 455 U.S. 104 (1982).   In Mr. Krawczuk's case, such an Eighth Amendment violation occurred, and the Florida Supreme Court's decision is contrary to and/or an unreasonable application of <u>Eddings</u>. See <u>Krawczuk I</u> at 1073-74.
>
> It was incumbent upon the trial court judge in Mr. Krawczuk's case to analyze any possible nonstatutory mitigating circumstances.   The court, however, failed to do so.   First, the court failed to inquire or seek any medical

testimony about Mr. Krawczuk despite his psychological history, his increasing depression, and his use of medications. While Mr. Krawczuk's trial counsel advised the court that there were mitigation witnesses, the court made no further inquiry. Several factors that unquestionably comprise nonstatutory mitigating factors were not considered by the court, including Mr. Krawczuk's deprived childhood, where his father failed to acknowledge him and his mother was abusive; his service in the military which was shortened by mental illness; and increased depression and feelings of built. Moreover, the Presentence Investigation Report in this case recommended life imprisonment. Because the trial court failed to consider these factors in mitigation, the Eighth Amendment was violated.

(Doc. 1 at 100-01).

Petitioner raised this claim on direct appeal where it was rejected by the Florida Supreme Court. The court determined that the trial court "carefully considered the psychiatrists report and the presentence investigation report and found that the record did not support the establishment of any nonstatutory mitigators." Krawczuk I, 634 So. 2d at 1073. The Florida Supreme Court also pointed to the trial court's oral statement that, in addition to those items, he considered "anything else [he] had been able to discern from these proceedings." Id. at 1073 n.4. The Florida Supreme Court's conclusions are supported by the record.

At Petitioner's Spencer hearing, the trial court noted that "[w]ith respect to mitigating factors, I believe that I may well be entitled to consider matters in the report and the matters in

the presentence investigation for the purpose of mitigating, finding mitigating factors. It appears, at least there may be several. At least there is the one, that is fairly insignificant criminal record. So, um, I will be looking at that further." (Ex. A3 at 419-20). At the oral pronouncement of Petitioner's sentence, the trial court stated that it had "looked to the presentence investigation and psychiatrist's report[14] in this case, solely for the purpose of considering whether they contain any mitigating factors." Id. at 425. The court concluded that he could not find any non-statutory mitigating factors "based on those documents or anything else [he had] been able to discern in these proceedings." Id. The court did not state that it refused to consider mitigating circumstances; rather, it simply found none. Other than re-arguing that counsel should have put more evidence

---

[14] The trial court's sentencing order also references "the psychiatrist report (in the record sealed)" and notes that the psychiatrist was of the opinion that the Petitioner overstated Poirier's influence over Petitioner (Ex. A5 at 590, 592). The court does not explain whether he refers to Dr. Keown's report or to a different psychiatric report. At the Spencer hearing, Petitioner indicated that he did not wish for the court to have access to Dr. Keown's report. However, Keown's report did note that "more than likely [Petitioner] is the more passive of the two defendants, and so I think there is some truth to his allegation that he was influenced by his co-defendant. However, I think he is probably overstating this." (Ex. D19B at 2204). Moreover, the Florida Supreme Court stated that the court, "over Krawczuk's personal objection, stated that he would look at the presentence investigation report and the confidential defense psychiatrist's report for possible mitigating evidence." Krawczuk I, 634 So. 2d at 1072. Accordingly, it appears that the trial court considered Keown's report when making its decision.

before the sentencing court, Petitioner does not explain how the state court's adjudication was contrary to clearly established law.

To the extent Petitioner argues that the trial court should have ignored Petitioner's request to waive mitigation and ordered that additional mitigation evidence be presented despite Petitioner's explicit waiver, he has presented no support for this claim. In fact, the courts which have addressed this issue have found that a defendant is allowed to waive a mitigation case. See Singleton v. Lockhart, 962 F.2d 1315, 1322 (8th Cir. 1992) ("If a defendant may be found competent to waive the right of appellate review of a death sentence, we see no reason why a defendant may not also be found competent to waive the right to present mitigating evidence that might forestall the imposition of such a sentence in the first instance"); Tyler v. Mitchell, 416 F.3d 500, 503–04 (6th Cir. 2005) (holding that because a capital defendant's counsel is not constitutionally ineffective when a competent defendant prevents him from investigating and presenting mitigation evidence, it follows that the Constitution does not prohibit a competent capital defendant from waiving the presentation of mitigation evidence); Chandler v. United States, 218 F.3d 1305, 1319 n. 25 (11th Cir. 2000) ("the cases concerning the constitutional right of defendants not to be precluded or limited by the state or the court in their presentation of

mitigation evidence at sentencing do not support the proposition that, if counsel does not present all possible mitigation at sentencing, then defendant has been denied some constitutional right"); James v. Culliver, No. CV-10-S-2929-S, 2014 WL 4926178, at * 91 (N.D. Ala. 2014) ("A competent defendant can waive the presentation of mitigating evidence during the penalty phase."); Landrigan, 550 U.S. at 479 ("We have never imposed an 'informed and knowing' requirement upon a defendant's decision not to introduced evidence.") (citing Iowa v. Tovar, 541 U.S. 77, 88 (2004)).

Petitioner's reliance on Eddings is misplaced.  In Eddings, the Supreme Court found that a sentence may not refuse to consider, *as a matter of law*, any relevant mitigating evidence." 455 U.S. at 114 (emphasis in original).  In its sentencing order, the trial court specifically acknowledged that it considered all available mitigation evidence and found that a sentence of death was supported by the facts of the case.  This Court is not convinced that Eddings stands for the proposition that  a sentencing judge is constitutionally required to independently seek out and consider additional mitigating evidence against the express wishes of the defendant.  Petitioner has cited no federal law even marginally supportive of this proposition, much less establishing it as a requirement.  Because there is no Supreme Court law on this issue, the Florida Supreme Court's rejection of Petitioner's

claim is not contrary to, and does not involve an unreasonable application of, clearly established federal law as determined by the Supreme Court.  Claim Four is denied pursuant to 28 U.S.C. § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## V.   Certificate of Appealability[15]

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability ("COA").  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El, 537 U.S. 322, 335-36 (2003).

---

[15] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

Petitioner has not made the requisite showing on any of his claims, and a certificate of appealability will be denied.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.   The Florida Attorney General is **DISMISSED** as a respondent.

2.   Each claim in the Petition for Writ of Habeas Corpus filed by Anton J. Krawczuk is **DENIED**.

3.   Petitioner is **DENIED** a certificate of appealability.

4.   The Clerk of the Court is directed to terminate all pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** at Fort Myers, Florida, this __5th__ day of August, 2015.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA:  OrlP-4
Copies to:  Counsel of Record